United States District Court
Southern District of Texas
**ENTERED**
February 04, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MARTIN JOSEPH GORMLEY, III,           §
                                      §
          *Petitioner*,               §
                                      §
v.                                    §          CIVIL ACTION NO. H-22-4087
                                      §
ERIC GUERRERO,                        §
                                      §
          *Respondent*.               §

## MEMORANDUM ORDER AND OPINION

Petitioner, a state inmate proceeding *pro se*, filed a habeas petition under 28 U.S.C. § 2254 challenging his conviction for super aggravated sexual assault of a child under the age of six. Respondent filed an answer, which the Court construed as a motion to dismiss. (Docket Entry No. 18.) Petitioner filed a response. (Docket Entry No. 31.)

Having considered the petition, the motion to dismiss, the response, the record, and the applicable law, the Court **GRANTS** the motion to dismiss and **DISMISSES** this lawsuit for the reasons shown below.

## I. BACKGROUND AND CLAIMS

A jury found petitioner guilty of super aggravated sexual assault of a child under the age of six in Harris County, Texas, and sentenced him to a forty-four-year term of imprisonment in 2016. The conviction was affirmed on direct appeal. *State v. Gormley*, No. 01-16-00717-CR, 2017 WL 5494627 (Tex. App.—Houston [1st Dist.] Nov. 16, 2017) (pet. ref'd). Petitioner was granted leave to file an out-of-time petition for discretionary review,

and discretionary review was denied in 2021. Petitioner's application for state habeas relief was denied by the Texas Court of Criminal Appeals without a written order on October 12, 2022, and petitioner timely filed the pending federal habeas petition.

Petitioner raises the following claims for federal habeas relief:

1.    Trial counsel was ineffective in

    a.    failing to object to the designation of Dr. Pham as an expert witness;

    b.    failing to conduct adequate pretrial investigation and failing to locate an expert witness;

    c.    failing to request a curative instruction and move for a mistrial after the trial court sustained his objection to certain evidence;

    d.    failing to request a hearing under Texas Code of Criminal Procedure Art. 38.072;

    e.    waiving petitioner's right to confrontation of the complainant; and

    f.    failing to call an expert witness to rebut the State's "pseudoscientific" propositions.

2.    The prosecution committed prosecutorial misconduct by knowingly presenting false testimony; and

3.    Appellate counsel was ineffective in failing to raise a confrontation issue.

Respondent argues that these claims have no merit and should be dismissed.

## II.  FACTUAL BACKGROUND

The intermediate state court of appeals set forth the following statement of facts in its opinion affirming petitioner's conviction:

2

Gormley lived with his girlfriend, Sharon, and Sharon's daughter, Donna, who was three years old at the time of the incident (both names are pseudonyms). Gormley was unemployed in September 2014 and was babysitting Donna while her mother was at work. One afternoon, Gormley called Sharon and asked her to come home because Donna's vagina was injured. When Sharon arrived, she saw "blood everywhere." Donna was lying on the couch. She was shaking and appeared lethargic. Gormley told Sharon that he thought Donna had fallen off of a chair, but Sharon found no blood near the chair. Gormley stated that, although he had not seen the child hurt herself because he was vacuuming in another room, Donna approached him and told him that she fell on a dinette chair that had been pulled up to a bar counter.

Sharon and Gormley took Donna to the emergency room. Sharon contacted her mother, who immediately headed to the hospital to meet them. When Sharon's mother arrived, Gormley was no longer in the room with Donna and Sharon. In Sharon's presence, Donna told her grandmother that Gormley "hurt my pee pee," meaning her vagina. Sharon's mother notified the nurse of Donna's statement.

Dr. Minh Pham, the emergency room physician, testified that after examining Donna, he concluded that Donna had a one-centimeter tear in her vaginal area consistent with a penetrating injury and recommended referral to a specialist for further examination and treatment. Police arranged for Donna to be transferred by ambulance to Memorial Hermann to see a specialist and undergo an examination by a SANE (sexual assault nurse examiner) nurse.

The SANE nurse found a tear and bruising on Donna's labia minora near the hymen. Testing did not show Gormley's semen on Donna's body, but his DNA could not be excluded as a contributor to one of the mixtures of blood and bodily fluid found on her clothing and diaper.

At trial, Dr. Pham stated that the injury to Donna's vagina was inconsistent with a fall, as there was no bruising or other injuries on her body. He testified that Donna's vaginal injury was consistent with penetration of some sort.

*Gormley*, 2017 WL 5494627, *1.

### III.  STANDARD OF REVIEW

This petition is governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court of the United States, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.  *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent.  *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

However, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Richter*, 562 U.S. at 102.  As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id.* at 102–103 (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31. This presumption of correctness extends not only to express factual findings, but also to implicit or unarticulated findings which are necessary to the state court's conclusions of mixed law and fact. *Murphy v. Davis*, 901 F.3d 578, 597 (5th Cir. 2018).

## IV. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

A.    Legal Standard

In order to establish ineffective assistance of trial counsel, a petitioner must prove that counsel's performance was deficient and that the deficient performance prejudiced petitioner's defense. *Strickland v. Washington*, 466 U.S. 668, 689–92 (1984). Because a petitioner must prove both deficient performance and prejudice, failure to prove either will be fatal to his claim. *Johnson v. Scott*, 68 F.3d 106, 109 (5th Cir. 1995).

Judicial scrutiny of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. As a result, there is a strong presumption that counsel rendered reasonable, professional assistance, and that the challenged conduct was the result of a reasoned trial strategy. *Id.*; *United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009). To overcome the presumption that counsel provided reasonably effective assistance, a petitioner must prove his attorney's performance was objectively unreasonable in light of the facts of the petitioner's case, viewed as of the time of the attorney's conduct. *Strickland*, 466 U.S. at 689–90; *Fields*, 565 F.3d at 294. This means a petitioner must overcome both the strong presumption that counsel's conduct fell within the "wide range of reasonable professional assistance," and that "under the circumstances, the challenged action might be considered sound trial strategy." *Richter*, 562 U.S. at 105.

In addition to proving counsel's performance was deficient, a petitioner is required to show prejudice resulting from counsel's inadequate performance. *Strickland*, 466 U.S. at 691–92. That is, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Mere allegations of prejudice are insufficient; a petitioner must affirmatively prove, by a preponderance of the evidence, that he was prejudiced as a result of counsel's deficient performance. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

When, as here, a petitioner claims ineffective assistance of counsel, that claim is subject to both AEDPA's deferential standard and the substantive framework established in *Strickland*. The result is a review that is "doubly deferential," applying first to the state court's adjudication of the claim and second to counsel's professional judgment. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). "Double deference" requires more than showing that counsel's performance was imperfect or that the outcome might have been different. *Richter*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable."). Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102.

B.     Dr. Pham

Petitioner claimed at trial that three-year-old Donna told him she fell on a chair and hurt herself. However, Donna's mother testified that Donna was actively bleeding from her vagina and there was no blood near the chair. Emergency room physician Dr. Pham examined Donna, found that she was bleeding from her vagina, and testified that Donna's injuries were inconsistent with falling from a chair. Dr. Pham was allowed to testify as an expert witness. Petitioner claims that trial counsel was ineffective in failing to object to the designation of Dr. Pham as an expert witness, in that Dr. Pham was not an expert in pediatric gynecology or sexual assault and had no experience in chair-related pediatric vaginal injuries.

Petitioner argued on direct appeal that Dr. Pham was improperly allowed to testify as an expert witness, but the argument was rejected by the intermediate state appellate court:

> Gormley contends that the trial court erred in admitting Dr. Pham's opinion that a fall could not have caused Donna's injury because (1) Dr. Pham was unqualified to render an opinion about whether a chair was involved in Donna's accident and the way Donna may have fallen, and (2) he improperly relied on speculation in forming his opinion.

> \*     \*     \*

> We review a trial court's decision to admit expert testimony for an abuse of discretion. A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement.

> The trial court may admit expert testimony if (1) the witness is qualified as an expert by knowledge, skill, experience, training, or education, and (2) the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. The trial court must be satisfied that (1) the witness qualifies as an expert by reason of her knowledge, skill, experience, training, or education; (2) the subject matter is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the factfinder in deciding the case. *Davis v. State*, 329 S.W.3d 798, 813 (Tex. Crim. App. 2010). "These conditions are commonly referred to as (1) qualification, (2) reliability, and (3) relevance." *Id.*

> The Texas Court of Criminal Appeals has interpreted Rule 702 "to require a proponent to prove by clear and convincing evidence that the proffered testimony is reliable and helpful to the jury in deciding the ultimate issue." We examine the trial court's ruling under these standards.

> Dr. Pham testified:

> Q.      What was it about the injury that made you feel there was more to the story?

> A.      Because a fall on a chair does not have this type of injury.

Q.    And that—

DEFENSE COUNSEL:    Your Honor, I'm going to object. Unless he knows what kind of chair, this is speculation.

THE COURT:    Overruled. Admitted as expert testimony.

Gormley first claims that because Dr. Pham is not an expert in pediatric gynecology, he is not qualified to opine that a chair does not cause the type of injury suffered by Donna. Dr. Pham's lack of specialization in gynecology, however, does not render him unqualified to testify concerning the types of injuries that typically result from a fall. Dr. Pham is a board-certified emergency physician with approximately 15 years' experience in emergency medicine. In his practice, he "takes care of any emergency that comes through the door," and has seen "anything from simple ankle sprains to fractured vertebrae, . . . lacerations, . . . heart attacks, strokes, all sorts." Before treating Donna, Dr. Pham had referred approximately nine to twelve patients to undergo SANE examinations, two of whom were children and had all sorts of lacerations. The evidence establishes that Dr. Pham has the knowledge, skill, and experience qualifying him to render an opinion as to the nature of Donna's injury and likely causes and to rule out a fall from a chair as a possible cause of the injury.

Gormley next claims that the trial court should have excluded Dr. Pham's testimony as speculative because he did not have sufficient information concerning the nature of the fall and the type of the chair allegedly involved in the incident. If an expert does not tie the facts of a case to his expert opinion, then the testimony is not admissible.

Dr. Pham tied his opinion to the facts of the case. He based his opinion on his physical examination of Donna. In addition, he "discussed the whole story" with both Gormley and the mother, taking a history of the reported events and confirming that the SANE nurse also received this information. Gormley argues that Dr. Pham could not have known all of the details about the chair as Gormley described them to the jury, but the trial court was entitled to credit the physician's testimony that he had elicited Gormley's statement about how the accident happened. Based on a physical examination of Donna, Dr. Pham diagnosed the specific injuries that Donna sustained. Dr. Pham explained the basis for his opinion, including his discovery of a small laceration inside the vaginal area, where injury to a child is very unusual. He further observed that

9

> if Donna had been injured from a fall, then there would have been bruising everywhere around that area, not just inside the vaginal area. Based on the reported history, the assessment, and the physical examination, Dr. Pham excluded the possibility that Donna injured herself by falling from a chair. Because Dr. Pham tied his opinion to the relevant facts adduced at trial, we hold that the trial court did not abuse its discretion in admitting his opinion that the laceration was not caused by a fall.

*Gormley*, at *1–*2 (citations partially omitted, headings omitted). Thus, the intermediate state appellate court held that the trial court did not abuse its discretion in admitting Dr. Pham's testimony as expert witness testimony.

Petitioner reurged his arguments on state collateral review and raised claims for ineffective assistance of counsel, but the Texas Court of Criminal Appeals denied relief without a written order. This constituted a denial of petitioner's claims on the merits. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999). The state trial court did not make findings of fact or conclusions of law.

Petitioner undertakes a two-pronged approach to his habeas claims in the instant proceeding. First, he repeats verbatim the arguments he made in state court, quoting at length from the trial record and voicing his disagreements with the testimony. Second, he relies on an affidavit submitted on state collateral review by private medicolegal consultant Harry J. Bonnell, M.D. Neither of these approaches moves petitioner past the exacting AEDPA standards. As to the first prong of his arguments, petitioner's disagreement with the evidence and rulings does not constitute clear and convincing evidence that rebuts the presumption of correctness, and warrants no federal habeas relief.

As to the second prong, petitioner's reliance on Bonnell's affidavit affords him no basis for federal habeas relief. Petitioner strongly faults Dr. Pham and pediatric SANES nurse Ferrell – medical practitioners who examined Donna following the sexual assault – for not being pediatric gynecologists, child sexual assault experts (as to Dr. Pham), or having experience in chair-related pediatric vaginal injuries. However, Bonnell himself is subject to these very same objections. Moreover, while he may be qualified to testify as an expert in certain subject matters, the Court does not presume that Bonnell, a forensic pathologist by training and experience, is qualified to render an opinion as to the facts of this case. Petitioner does not show that Bonnell has sufficient experience, education, or training to offer expert testimony as to pediatric sexual assault or chair-related pediatric injuries, or that his opinions in those areas would have an adequate basis in medical science. *See Pedraza v. Davis*, No. 2:17-CV-190-Z-BR, 2020 WL 4698325, at *1 (N.D. Tex. Aug. 13, 2020) ("Petitioner did not show that Dr. Bonnell has adequate experience and training to offer such expert testimony as to sexual assault and abuse of children, or that such opinions provide the Court with an adequate basis in medical science."); *see also Salinas v. City of San Jose*, No. C-09-04410-RS, 2010 WL 725803, at *1 (N.D. Cal. 2010) (unpublished) (finding "that Dr. Bonnell's significant experience in forensic pathology does not include substantial experience with [tasers], either in the context of autopsies he performed or otherwise.").

Moreover, Bonnell did not testify that, in his medical opinion, Donna had not been sexually assaulted or that her vaginal trauma had been caused by falling on a chair. (Docket

Entry No. 20-24, pp. 110–11.)  To the contrary, he provided no medical opinions whatsoever in his affidavit.  In lieu of medical opinions, Bonnell set forth observations and comments culled directly from his review of the court clerk's records and trial transcripts.  These are set forth below, followed by the Court's analysis as to each:

– that Dr. Pham "was hardly an expert" in child and sexual abuse.  *Id.*, p. 110.

> The Court notes that the state trial court did not find that Dr. Pham was an expert in child and sexual abuse.  Dr. Pham testified that Donna's vaginal injuries, in absence of other external injuries, could not have been caused by falling on a chair.  The intermediate state appellate court held that "Dr. Pham's lack of specialization in gynecology, however, does not render him unqualified to testify concerning the types of injuries that typically result from a fall."  Bonnell's comment that Dr. Pham "was hardly an expert" is little more than his personal disagreement with the trial and intermediate state appellate courts' determinations that Dr. Pham properly testified as an expert witness, and provides no basis for granting federal habeas relief.

– that Dr. Pham did not perform an internal vaginal examination yet described external vaginal bruising and an internal vaginal laceration.  *Id.*

> The Court notes that this evidence was presented to the jury, and any credibility issues or inconsistencies in the evidence were for the jury to weigh and determine.  Bonnell proffers no medical opinion that Donna was not sexually assaulted and that her injuries were straddle injuries caused by falling from a chair.  Bonnell's reiteration of Dr. Pham's testimony provides no basis for granting habeas relief.

– that Dr. Pham "describes an abrasion contusion of [Donna's] groin and says that a fall should have bruising but said this was not a fall."  *Id.*

> The Court again notes that this evidence was presented to the jury, and any credibility issues or inconsistencies in the evidence were for the jury to weigh and determine. Bonnell proffers no medical opinion that Donna was not sexually assaulted and that her injuries were straddle injuries caused by falling from a chair. Bonnell's reiteration of Dr. Pham's testimony provides no basis for granting habeas relief.

– that Dr. Pham "states that a fall on a chair does not cause this type of injury without having examined the injury or seeing the suspect chair which has wheels and could easily cause a child standing on it to fall awkwardly and suffer a straddle injury on the chair's back or arm." *Id.*

> The Court notes that Dr. Pham testified that he examined Donna following the sexual assault and presented his findings to the jury. Any credibility issues or inconsistencies in the evidence were for the jury to weigh and determine. Bonnell proffers no medical opinion that Donna was not sexually assaulted and that her injuries were straddle injuries caused by falling from a chair. Bonnell, too, did not see the chair, and his speculation that the chair could easily cause a child to fall awkwardly and sustain a straddle injury provides no basis for habeas relief.

– that DNA expert Foley "incorrectly states that DNA is found in every cell in the body. DNA is not found in red blood cells. His DNA analysis excludes the defendant in every sample tested except possibly the external tab of the diaper which would be handled during any diaper change nor can it be sure that the diaper tested was on at the time of the incident since the mother admitted that the child did not need a diaper and that she put one on only after coming home for the child." *Id.*

> Bonnell's comment that Foley incorrectly testified that DNA is found in every cell provides no support for petitioner's ineffective assistance claim. Petitioner does not show that, but for counsel's failure to rebut Foley's statement, the results of the trial would have been different. Bonnell proffers no opinion that Foley's DNA analyses were wrong. Moreover, the DNA analysis of the diaper tab was presented to the jury, and any weight to be given it was for the jury. Bonnell's comments provide no basis for habeas relief.

– that "SANE nurse Farrell [*sic*] has created novel ideas of biomechanics, which are refuted by scientific facts. [S]he testifies that with a fall, labia majora must hit first; actually, the most likely initial impact sight [*sic*] is the groin or inner thigh unless the legs are spread widely to expose the labia." *Id.*

> The record shows that the SANE nurse's correct surname is Ferrell. Bonnell presents no scientific or medical testimony refuting Ferrell's testimony, and provides no support for his comment regarding the most likely initial impact site for a chair fall. Bonnell proffers no medical opinion that Donna was not sexually assaulted and that her injuries were straddle injuries caused by falling from a chair. His comments are conclusory speculation that provide no basis for habeas relief.

– that "She falsely states that because of the head/neck flexibility, the child must fall to the right or left; this is obviously absurd as the neck has very little lateral bending motion but the weight of the head will cause the neck to flex forward or possibly backward, NOT to the side. Two biomechanics experts with PhD's have confirmed this." *Id.*, pp. 110–11 (original emphasis).

> The Court notes that Bonnell is not a biomechanics expert, nor does he support his comment with confirmation from biomechanics experts. Bonnell proffers no medical opinion that Donna was not sexually assaulted and that her injuries were straddle injuries caused by falling from a chair. Bonnell's comment that Ferrell's testimony was "obviously absurd" is conclusory, unsupported, and provides no basis for habeas relief.

– that "Dr. Pham mislead the jury by lying and Nurse Farrell [*sic*] did the same with her creative biomechanics; neither apparently ever considered the diagnosis of a straddle in jury [*sic*], [*sic*] The defense attorney was not prepared to cross-examine either witness on this inaccurate testimony, which bordered on perjury." *Id.*, p. 111.

> Bonnell's comment that Dr. Pham and SANE nurse Ferrell lied to the jury if not perjured themselves is conclusory, speculative, and unsupported. Bonnell proffers no basis for speculating as to what any witness did, or did not, consider or whether defense counsel was, or was not, prepared for cross-examination of the

witnesses. Bonnell proffers no medical opinion that Donna was not sexually assaulted and that her injuries were straddle injuries caused by falling from a chair. Bonnell's comments provide no basis for habeas relief.

– that "Had he [*sic*] consulted with a true expert, such as a forensic pathologist, he [*sic*] would have been prepared to attack this inaccurate testimony." *Id.*

Bonnell's insinuation that defense counsel – who was a woman – was unprepared to cross-examine witnesses is conclusory, speculative, and unsupported. His comment provides no basis for habeas relief.

In short, Bonnell's affidavit presents no medical opinions and provides no basis for granting habeas relief in this case. Petitioner submitted a copy of Bonnell's affidavit in his application for state habeas relief, and the Texas Court of Criminal Appeals denied the application on the merits.

Petitioner does not show that, had counsel objected to Dr. Pham as an expert witness, the objection would have been granted. He further does not establish that, but for counsel's failure to object to Dr. Pham as an expert witness, there is a reasonable probability that the result of his trial would have been different.

Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to dismissal of this claim.

C.    Pretrial Investigation

Petitioner contends that trial counsel was ineffective in failing to conduct an adequate pretrial investigation and failing to locate an expert witness to rebut the State's evidence of sexual penetration.

To provide effective assistance during the pretrial stages, trial counsel must "conduct a reasonable amount of pretrial investigation." *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985); *Bower v. Quarterman*, 497 F.3d 459, 468 (5th Cir. 2007) ("An attorney has a duty to independently investigate the charges against his client."). To prevail on a habeas claim regarding a failure to conduct an investigation, a petitioner must point to specific evidence that would have been uncovered by a more thorough investigation. *Nealy*, 764 F.2d at 1178. A "failure to investigate can be constitutionally deficient only if it resulted in the exclusion of competent evidence." *United States v. Drones*, 218 F.3d 496, 502 (5th Cir. 2000).

Petitioner does not direct the Court to any competent evidence that additional investigation would have uncovered. Rather, his assertions of what counsel would have discovered are conclusory, speculative, and unsupported in the record. As such, petitioner has not demonstrated that trial counsel's investigation was deficient.

Moreover, petitioner fails to meet his burden of proof as to uncalled expert witnesses. To prevail on a claim that counsel failed to call a witness, a petitioner must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have

16

been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981) (citations omitted).

Petitioner argues that Bonnell was available to testify at trial and that he would have testified in conformity with his affidavit. However, as noted earlier by the Court, petitioner does not show that Bonnell is qualified to testify as an expert as to Donna's injuries and their medically probable causation. Even so, Bonnell's affidavit proffers no expert witness testimony as to Donna's injuries or other exculpatory evidence. His observations and comments reiterate evidence or inconsistencies in the evidence that were already before the jury or that are conclusory, speculative, and unsupported. Petitioner does not show that, but for trial counsel's failure to present Bonnell as an expert witness, there is a reasonable probability that the result of his trial would have been different.

Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to dismissal of this claim.

D.    Failure to Move for Mistrial

Petitioner next argues that trial counsel was ineffective in failing raise a complete

objection to Dr. Pham's testimony that "a child does not lie."  He admits that counsel

objected to the testimony and that the objection was sustained, but contends that counsel

should have also moved for a curative instruction and a mistrial.

The intermediate state appellate court addressed and rejected petitioner's argument

on direct appeal, as follows:

> Finally, Gormley claims his trial counsel was deficient for failing to request
> additional relief after the trial court sustained counsel's objection to Dr.
> Pham's statement on the first day of trial that "children do not lie." This
> statement came on the heels of Dr. Pham's testimony relating to his medical
> treatment decisions, in particular, his decision to refer Donna for a SANE
> exam and treatment by a gynecological specialist. *The trial court sustained
> defense counsel's objection to this testimony and instructed the jury to
> disregard it.*[1]
>
> On the second day of trial, the SANE nurse testified in detail about Donna's
> examination and her opinion that Donna's injuries were consistent with that
> of a non-accidental penetrating injury, confirming Dr. Pham's opinion. Both
> the SANE nurse and Dr. Pham concluded that Donna's injuries were not
> consistent with Gormley's account that Donna injured herself by falling from
> a chair. *Based on the amount and the strength of the evidence in favor of the
> jury's verdict, Gormley has not demonstrated that the outcome of a new trial
> would have been different had his counsel pursued a mistrial.*

*Id.* at *5–*6 (citations omitted, emphasis added).

_____

[1]The record shows that the trial court sustained trial counsel's objection to Dr. Pham's
statement, but it does not show that the court instructed the jury to disregard it.  (Docket Entry
No. 20-4, p. 32.)  However, the Court does not find that this factual error requires the granting of
habeas relief, in that the intermediate appellate court reasonably found that petitioner failed to
establish prejudice under *Strickland*.

Though counsel did not request an instruction to disregard or move for a mistrial, petitioner does not demonstrate that, had counsel requested a mistrial, it would have been granted. Even so, the intermediate state appellate court affirmatively found that, based on the amount and strength of the evidence supporting the jury's verdict, petitioner did not show that the outcome of a new trial would have been different. The Court does not find this determination to be objectively unreasonable, and deficient performance and prejudice under *Strickland* are not shown.

Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to dismissal of this claim.

E.    Outcry Hearing

Petitioner alleges that trial counsel was ineffective in failing to object to outcry testimony and not requesting a hearing under Texas Code of Criminal Procedure Art. 38.072. Petitioner raised this claim on direct appeal and it was denied by the Texas Court of Criminal Appeals, as follows:

> Gormley first argues that his counsel was deficient in failing to secure a hearing on Donna's outcry statement to her grandmother pursuant to article 38.072 of the Code of Criminal Procedure. The outcry statute creates a hearsay exception for a child-complainant's out-of-court "statements" that "describe the alleged offense," so long as those statements were made "to the first [adult] person . . . to whom the child . . . made a statement about the offense." *See* TEX. CODE CRIM. PROC. art. 38.072, § 2(a)(1)–(3). The statute thus permits the

"first person" to whom the child made a "statement about the offense" to testify regarding the statements' contents.

Before the trial court may admit an "outcry statement," the party intending to offer the statement must notify the adverse party, provide the name of the witness, and provide the adverse party with a written summary of the statement. TEX. CODE CRIM. PROC. art. 38.072[.] To admit the statement, the trial court, after conducting a hearing outside the presence of the jury, must find that the statement is reliable based on the time, content, and circumstances surrounding its utterance. TEX. CODE CRIM. PROC. art. 38.072(b)(2)[.]

The record shows that Donna made her outcry statement, that Gormley "hurt my pee pee," in a patient room at the emergency center in the presence of her mother and grandmother. The grandmother informed the attending nurse of Donna's statement, who recorded it in her notes.

Sharon testified to her daughter's outcry statement. The State identified Sharon as a witness through whom it intended to offer Donna's outcry statement. Because Donna first made the statement to both Sharon and her grandmother, Sharon is a proper outcry witness. *See* TEX. CODE CRIM. PROC. art. 38.072. The State agreed not to call the grandmother as a witness after defense counsel objected based on the prohibition against more than one outcry witness per event. Because defense counsel succeeded in preventing the grandmother from testifying, a hearing on whether the grandmother was an outcry witness was unnecessary. Gormley thus has failed to show ineffective assistance on this ground.

\*    \*    \*

Third, Gormley claims that his counsel was deficient in failing to object to testimony about Donna's outcry statement to her grandmother. As noted above, the record belies this claim. The outcry statement came into evidence through a proper witness, and the jury did not hear from the other possible outcry witness. Defense counsel persisted in objecting to the prosecutor's questions to the Children's Assessment Center (CAC) interviewer that sought to elicit a repetition of Donna's outcry statement and was successful in preventing the statement's admission through that avenue. Absent any evidence to the contrary, counsel is presumed to have acted in a reasonably effective manner. *See Strickland*, 466 U.S. at 689.

20

*Gormley*, at *4–*5 (citations partially omitted).

Petitioner's disagreement with the state court's determinations against him provides no basis for federal habeas relief. Petitioner does not establish that, but for counsel's failure to raise this objection and move for a statutory hearing, the result of his trial would have been different. Deficient performance and prejudice under *Strickland* are not shown, and habeas relief is unwarranted.

Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to dismissal of this claim.

F.    <u>Right of Confrontation</u>

Petitioner claims that trial counsel was ineffective in waiving petitioner's right to confrontation in that he did not demand that Donna appear in court and testify. Petitioner raised this claim in his application for state habeas relief; the Texas Court of Criminal Appeals denied the application without a written order. The state trial court on habeas review did not make findings of fact and conclusions of law.

Petitioner did not respond to the respondent's motion to dismiss as to this issue and respondent's motion as to the issue is unopposed. (Docket Entry No. 31, p. 9.) Even so, petitioner's claim has no merit. Because petitioner frames his argument as a claim for

ineffective assistance of counsel, petitioner must prove deficient performance and prejudice under *Strickland*. He does not satisfy his burden of proof.

Donna's outcry statement did not implicate petitioner's right of confrontation as to the child, as the statement was not testimonial in nature. The Confrontation Clause of the Sixth Amendment provides that in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him. *Ohio v. Clark*, 576 U.S. 237, 243 (2015). In *Clark*, the Supreme Court of the United States held that the Confrontation Clause prohibits the introduction of testimonial statements by a non-testifying witness unless the witness is unavailable to testify, and the defendant had a prior opportunity for cross-examination. *Id.*; *see also Crawford v. Washington*, 541 U.S. 36, 54 (2004). "[A] statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial. Where no such primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." *Clark* at 245. "Statements by very young children will rarely, if ever, implicate the Confrontation Clause." *Id.* at 248. Moreover, statements made to individuals who are not law enforcement officers are much less likely to be testimonial. *Id.* at 246. "In the end, the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Id.* at 244. Here, three-year-old Donna's statement to her mother and grandmother regarding petitioner's actions was not testimonial in nature, and petitioner establishes nothing to the contrary. Donna's statement did not implicate

petitioner's confrontation rights, and counsel was not deficient in failing to raise a groundless motion or objection.

Moreover, a trial counsel's decisions as to witness presentation is a matter of trial strategy, and a strong presumption arises that counsel's conduct falls within the wide range of reasonable professional assistance. *See Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002). Cross-examination of Donna at trial would have carried a risk of her confirming for the jury that petitioner sexually assaulted her. It would be reasonable trial strategy for trial counsel to take steps to avoid the risk of presenting evidence harmful to petitioner's defense.

Additionally, petitioner fails to demonstrate prejudice under *Strickland*. Petitioner argues that, because of counsel's ineffective assistance, the jury was not allowed to hear "potentially exculpating testimony from the child" and that "it is undisputed and reasonable to believe that this child's testimony would have altered the outcome of [my] trial in a manner favorable to [me]." (Docket Entry No. 1, p. 7.) It is far from undisputed, nor is it reasonable to assume, that Donna would have testified in petitioner's favor. Nothing in the record indicates that Donna's testimony would have been exculpatory, and petitioner's arguments are speculative, unsupported, and warrant no relief.

Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to dismissal of this claim.

G.    Pseudoscience Rebuttal

Petitioner argues that trial counsel was ineffective in failing to call an expert witness to rebut the State's "pseudoscientific" propositions. Specifically, he argues that trial counsel was ineffective in failing to request a continuance to have blood evidence tested and failing to call Bonnell to rebut the testimony of DNA expert Foley and SANE nurse Ferrell.

The Texas Court of Criminal Appeals denied habeas relief on the merits of these claims and petitioner does not establish that rejection of the claims was objectively unreasonable. Petitioner does not demonstrate that, had counsel requested a continuance during trial to undertake the blood test, that the continuance would have been granted. Petitioner further fails to show that, had the evidence been tested pursuant to his request, the results would have been favorable to his defense. Consequently, petitioner does not show that, but for counsel's failure to request a continuance to have blood evidence tested, the result of his trial would have been different.

Plaintiff further fails to show that trial counsel was ineffective in not calling Bonnell to rebut the testimony of DNA expert Foley and SANE nurse Ferrell. In his affidavit, Bonnell comments that Foley incorrectly testified that all cells contain DNA, because red blood cells contain no DNA. Petitioner does not show that, but for counsel's failure to call Bonnell to testify that red blood cells do not contain DNA, there is a reasonable probability that the result of the trial would have been different. Nothing in the record indicates that the question of red blood cells having DNA was inculpatory, exculpatory, or relevant to a

material issue.  As noted earlier, Bonnell did not present any expert witness testimony in his affidavit disagreeing with the results of Foley's DNA analysis, and petitioner does not establish that Bonnell was qualified to testify as an expert witness as to DNA testing and analysis.  Thus, petitioner does not demonstrate that Bonnell would have presented expert witness testimony rebutting Foley's DNA testing analysis and that, but for counsel's failure to call Bonnell, there is a reasonable probability that the result of his trial would have been different.  Petitioner fails to establish deficient performance and prejudice under *Strickland*.

These same deficiencies in proof apply to petitioner's complaints regarding SANE nurse Ferrell.  Petitioner alleges that, "Putting Dr. Bonnell on the stand to rebut Ferrell's misleading statements and demonstrating how the fall happened could have convinced the jury as to how this happened."  (Docket Entry No. 31, p. 11.)  Petitioner's assertion is conclusory, speculative, and unsupported in the record.  No one saw Donna fall from a chair, and Bonnell would have no basis for testifying at trial as to how Donna fell.  Although Bonnell disagreed in his affidavit with certain aspects of Ferrell's testimony, he proffered no expert testimony supporting his disagreement, nor did petitioner establish that Bonnell was qualified to present expert witness testimony rebutting Ferrell's testimony.  Thus, petitioner does not demonstrate that, but for counsel's failure to call Bonnell, there is a reasonable probability that the result of his trial would have been different.  Petitioner does not establish deficient performance and prejudice under *Strickland*.

Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to dismissal of this claim.

## V.  PROSECUTORIAL MISCONDUCT

Petitioner next argues that he was denied due process when the prosecution presented false testimony of Dr. Pham and SANE nurse Ferrell. He contends that this constituted prosecutorial misconduct in that the prosecution knew or should have known that the medical testimony was false if not perjured.

It is well established that the prosecution may not knowingly use perjured testimony or allow perjured testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Giglio v. United States*, 405 U.S. 150, 154 (1972). However, to prove a due process violation in such a case, a petitioner must demonstrate (1) that the testimony in question was actually false, (2) that the prosecutor was aware of the perjury, and (3) that the testimony was material. *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996).

Petitioner fails to establish these elements. His assertions of false or perjured testimony are conclusory and unsupported in the record. To the extent that he relies on Bonnell's habeas affidavit as proof that Dr. Pham and SANE nurse Ferrell's testimonies were false and perjured, Bonnell's affidavit provides no such proof. Bonnell's comments and observations in his affidavit were not expert witness testimony. Even assuming they were

26

expert witness testimony, Bonnell's disagreement with certain aspects of Dr. Pham and SANE nurse Ferrell's testimony did not establish that the testimony was false or perjured or that the prosecution was aware of any falseness or perjury.

The state court denied habeas relief. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to dismissal of this claim.

## VI. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Petitioner argues that appellate counsel was ineffective in failing to raise a confrontation issue as to Donna. The Texas Court of Criminal Appeals on state collateral review denied habeas relief on this issue.

The Court has already determined, *supra*, that Donna's statements did not implicate petitioner's confrontation rights. Consequently, petitioner does not establish under *Strickland* that, but for appellate counsel's failure to raise the issue on appeal, the result of the appeal would have been different.

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to dismissal of this claim.

27

## VII.   EVIDENTIARY HEARING

Under 28 U.S.C. § 2254(e)(2), if a petitioner has failed to develop the factual basis

of a claim in state court proceedings, no evidentiary hearing is required on unless

(A)     the petitioner shows that the claim relies on –

    (i)     a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

    (ii)     a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B)     the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).  Petitioner does not meet these requirements and he is not entitled

to an evidentiary hearing.

## VIII.   CONCLUSION

For the above reasons, respondent's motion to dismiss (Docket Entry No. 18) is

**GRANTED** and this lawsuit is **DISMISSED WITH PREJUDICE**.  Any and all pending

motions are **DISMISSED AS MOOT**.    A certificate of appealability is **DENIED**.

Signed at Houston, Texas, on this the 3 6th day of January, 2026.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

28